United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD CARMEN-HUANCA,<br>Petitioner,<br>v.<br>WARDEN, MESA VERDE DETENTION CENTER, *et al.*,<br>Respondents. | Case No. 1:26-cv-04203 (EJD)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

This habeas action concerns the detention of Petitioner Harold Carmen-Huanca, a noncitizen who has lived in the United States since being released from immigration custody sometime in 2023. Dkt. No. 6 at 11. Based on the Government's application of 8 U.S.C. § 1225(b)(1), Petitioner was re-detained on May 18, 2026. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus in part.

## I. BACKGROUND

Petitioner is a citizen of Peru who entered the United States near Eagle Pass, Texas on March 26, 2023. *Id*. Petitioner was subsequently arrested by a border patrol agent, placed in expedited removal proceedings, and interviewed by an asylum officer for a credible fear determination who found that Petitioner has a "positive fear claim." *Id*. Following this determination, Petitioner was served with a notice to appear, which placed him in removal proceedings under INA § 240 and set his next immigration hearing for the following year on April 9, 2024. *Id*. at 14. It appears Petitioner was then released from immigration custody. Following his release, Petitioner began working as a barber and in construction. Dkt. No. 1 ¶ 25. He was re-detained by U.S. Immigration and Customs Enforcement on May 18, 2026 following an arrest for

United States District Court
Eastern District of California

driving under the influence on May 17, 2026. *Id.* ¶ 19; Dkt. No. 6 at 11.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner filed the instant habeas petition arguing that his detention violates due process and the Immigration and Nationality Act. *See* Dkt. No. 1 ¶¶ 30–34. Respondents contend that both of Petitioner's claims fail because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii). Dkt. No. 6 at 3. Where a noncitizen is determined to be an applicant for admission pursuant to § 1225(a)(1), and has received a credible fear determination by an immigration officer, § 1225(b)(1)(B)(ii) provides that the noncitizen shall be detained for further consideration of his asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii). Respondents argue that since Petitioner has not been admitted, is present in the United States, and has received a credible fear determination, he may now be detained under § 1225(b)(1)(B)(ii). *Id.*

Multiple courts across the country have found that § 1225(b)(1) does not authorize the expedited removal and detention of noncitizens who, like Petitioner, were previously paroled into the United States and can no longer be considered "arriving" at the nation's borders. *See, e.g.*, *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 297 (E.D.N.Y. 2025) (finding that Section

1225(b)(1) does not authorizes expedited removal and the detention of noncitizens who were paroled into the United States); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 83, 94 (D.D.C. 2025) (concluding that Section 1225(b)(1) "forbids the expedited removal of noncitizens who have been, *at any point in time*, paroled into the United States" because "the only way to make sense of the statutory scheme Congress created is to see that parolees fall under neither [provision of Section 1225(b)(1)]" and that "[a]ny other result conflicts with other aspects of the statute and regulations, Congress's evident purpose, and the ordinary meaning of the statute's words"); *Bustos v. Raycraft*, No. 25-CV-13202, 2025 WL 3022294, at *6 (E.D. Mich. Oct. 29, 2025) (finding that a noncitizen who unlawfully entered the country, was paroled into the United States, and received a negative credible fear designation was not subject to expedited removal and detention despite the expiration of temporary parole); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 414 (S.D.N.Y. 2025); *Avila-Mena v. Kaiser*, No. 25-CV-6783, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1168 (S.D. Cal. 2025). The Court similarly rejects this argument here.

As § 1225(b)(1) does not allow for mandatory detention, the Court turns next to Petitioner's due process claim. Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**A. Liberty Interest**

Given that Petitioner was released into the interior of the United States, he has a protected liberty interest in his continued freedom. *See Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012-DAD-SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026) (noting that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention

scheme"); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (same). Courts throughout this circuit have found that where a noncitizen is released from immigration detention on parole, and the Government seeks to revoke that parole and re-detain the individual, process is required to justify that re-detention. *See, e.g.*, *Ramazan M. v. Andrews*, No. 1:25-CV-01356-KES-SKO (HC), 2025 WL 3145562, at *5 (E.D. Cal. Nov. 10, 2025); *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1103 (E.D. Cal. 2026); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025); *Castillo v. Wofford*, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8–9 (E.D. Cal. Dec. 2, 2025). "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-CV-06695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (internal quotations omitted).

**B. *Mathews* Factors**

Given that Petitioner has a liberty interest in his continued freedom following his release, the Court turns next to what process is due. Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[1] There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private

[1] Respondents contend that the Supreme Court has never expressly endorsed the *Mathews* framework in the immigration context. Dkt. No. 10 at 6. The Court need not address whether this representation is accurate, as the Ninth Circuit has applied this framework with respect to an as-applied constitutional challenge to immigration detention. *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court, therefore, does the same here.

interest in remaining out of immigration custody because he has been released pending civil removal proceedings for over three years. Respondents do not meaningfully engage with the fact that Petitioner was released, and instead maintain that individuals do not possess a "freedom from all detention itself." Dkt. No. 6 at 7. The distinction here, however, is that Petitioner was previously detained and then released by the Government. In the intervening years he has been afforded the freedom to develop ties in his community, work, and pursue various forms of immigration relief. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). The record before the Court indicates that Petitioner was released from immigration custody sometime in 2023, and then had the released revoked without any independent finding of changed circumstances by a neutral arbiter before he was re-detained.

The record, however, shows that Petitioner's detention may be justified given his arrest in May 2026. But the relevant question is whether that event constitutes changed circumstances that would justify an immigration judge revoking Petitioner's release. While "providing Petitioner with notice and a pre-deprivation hearing [prior to detention] [may] have been impracticable and/or would have motivated his flight[,]" *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT-SKO, 2025 WL 3265446, at *12 (E.D. Cal. Nov. 24, 2025), "allowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, 791 F.Supp.3d 1021, 1029, 1035 (N.D. Cal. July 17, 2025). As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

United States District Court
Eastern District of California

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d at 970; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Id.* at 1094. Providing Petitioner with a post-deprivation hearing here would impose a minimal burden on the Government relative to the due process concerns.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED in part. IT IS HEREBY ORDERED that:

1. Petitioner SHALL be provided a *substantive* bond hearing within fourteen (14) days at which an Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if he is released.

2. At any such hearing, the Government SHALL bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. Petitioner SHALL be allowed to have counsel present.

3. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: Augst 3, 2026

EDWARD J. DAVILA
United States District Judge